# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES L. GOODELL, | ) | CASE NO. 3:08-cv-02479 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JESSE WILLIAMS, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Charles L. Goodell ("Goodell"), challenges the constitutionality of his conviction in the case of *State v. Goodell*, Lucas County Court of Common Pleas Case No. CR-2001-1324.  Goodell, represented by counsel, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 10, 2008.  On April 2, 2009, Warden Jesse Williams ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 8.)  Goodell filed a Traverse on June 1, 2009.  (Doc. No. 16.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Goodell's petition be DENIED.

## I.  Procedural History

### A.    Conviction

On February 26, 2001, the Lucas County Grand Jury charged Goodell with one count of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(2), two counts of aggravated

burglary in violation of O.R.C. § 2911.11(A)(1), and two counts of felonious assault in violation of O.R.C. § 2903.11(A)(1).  (Doc. No. 8, Exh. 1.)  On April 9, 2002, a jury found Goodell guilty as charged.  (Doc. No. 8, Exhs. 3-7.)  On April 10, 2002, the trial court sentenced Goodell to five years of imprisonment on the first count and to four years imprisonment for each remaining charge.  The four-year sentences were to be served concurrently, but consecutive to the five year sentence, for an aggregate nine-year term.  (Doc. No. 8, Exh. 8.)

**B.    Direct Appeal**

Goodell, through counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth  Appellate District ("state appellate court").  That court summarized the appellate history of this case as follows:

> Appellant filed a timely appeal in which he claimed that the trial court erred by ordering him to pay "unspecified fees and expenses" without first holding a hearing to determine whether he had the ability to pay.  In November 2003, this court reversed the judgment of the trial court as to the order that appellant pay restitution, costs and fees and remanded for further proceedings on that issue only.  *State v. Goodell*, 6th Dist. No. L-02-1133, 2003 Ohio 6374.

> [*P13]  In 2004, appellant filed an application for reopening of his direct appeal pursuant to App.R. 26(B).  The application to reopen was granted, limited to the issue of whether the trial court had complied with the statutory requirements for the imposition of consecutive sentences.  *State v. Goodell*, 6th Dist.No. L-02-1133, 2004 Ohio 2676.  By judgment entry filed October 29, 2004, this court found that the trial court did not make the mandatory findings required by R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) for the imposition of consecutive sentences.  The case was remanded to the trial court for resentencing in accordance with our decision and the applicable law.  *State v. Goodell*, 6th Dist. No. L-02-1133, 2004 Ohio 5755.

> [*P14]  On remand, the matter was heard by a different judge.  Contrary to this court's October 29, 2004 order, the trial court did not limit its review on remand to the issue of consecutive sentences and the failure to comply with the relevant statutes.  Instead, by judgment entry filed July 15, 2005, the trial court increased appellant's sentence for the rape conviction from five years to seven and increased the two sentences for aggravated burglary from four years to five years

-2-

each; the sentences for the two counts of felonious assault remained the same at four years each.  The trial court then ordered the two four-year sentences to be served concurrently to each other, and the two five-year sentences to be served concurrently.  The five-year and four-year terms were ordered served consecutively to each other and consecutively to the seven-year term imposed for rape.  This resulted in a total sentence of 16 years, seven more than the original sentence.

[*P15]  Appellant appealed this sentence, arguing that the trial court was barred from conducting the resentencing hearing *de novo* and acted outside its authority when it imposed greater terms of incarceration for the convictions for rape and aggravated burglary.  In our June 30, 2006 decision on that appeal, we found appellant's arguments well-taken and again remanded for resentencing.  We found that the original sentences imposed for each conviction remained effective pursuant to our 2004 decision following appellant's application for reopening; the trial court was therefore instructed to resentence appellant to the original terms of incarceration for each offense.  We further instructed the trial court to resentence appellant in accordance with the mandate of *State v. Foster*, 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470, regarding the imposition of consecutive sentences.  *State v. Goodell*, 6th Dist. No. L-05-1262, 2006 Ohio 3386.

[*P16]  Accordingly, a third sentencing hearing was held on December 19, 2006.  The 16-year sentence was reduced to 13 years, which was four years more than the original sentence.  This was accomplished by reducing the sentences imposed in 2005 to the original terms for each offense.  The trial court then ordered Counts 2 and 4 to be served concurrently to each other for a total of four years, and Counts 3 and 5 to be served concurrently to each other for another four years; Counts 3 and 5 were ordered to be served consecutively to Counts 2 and 4. Count 1, the five-year rape sentence, was ordered to be served consecutively to the other sentences.

*State v. Goodell*, 2007 Ohio App. LEXIS 4686, 2007-Ohio-5318 (Ohio Ct. App. Sept. 28, 2007).

After his third sentencing hearing, Goodell again sought relief from the state appellate court,

which ultimately affirmed the trial court's sentence.  (Doc. 8, Exhs. 26-29.)

On November 8, 2007, Goodell filed an appeal with the Supreme Court of Ohio.  (Doc. No.

8, Exh. 30.)  On February 6, 2008, the Supreme Court of Ohio denied leave and dismissed the

appeal as not involving any substantial constitutional question. (Doc. No. 8, Exh. 32.)

-3-

### C.    Federal Habeas Petition

On October 20, 2008, Goodell filed a Petition for Writ of Habeas Corpus and asserted the

following grounds for relief:

> GROUND ONE: Charles L. Goodell was deprived of his right to due process
> under the Fourteenth Amendment to the United States Constitution when the
> resentencing court imposed a harsher sentence upon remand.

> GROUND TWO: The remedy that the Ohio Supreme Court set forth in *State v.
> Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (Ohio 2006), violates the Ex Post Facto
> and Due Process Clauses of the United States Constitution.

(Doc. No. 1.)

## III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d

1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not

-4-

mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One: Vindictiveness**

In ground one, Goodell argues that the longer sentence he received after his successful appeal was the result of judicial vindictiveness. (Doc Nos. 1 & 16.) Specifically, Goodell argues that the presumption of vindictiveness should apply to his resentencing, relieving him of the burden of proof. In the alternative, he argues that the record supports his claim that his

sentence was the product of actual vindictiveness.

With respect to this argument, the state appellate court held as follows:

[*P17]  In his first assignment of error, appellant presents two arguments in support of his claim that the sentence imposed in 2006, was the result of judicial vindictiveness.  First, appellant argues that there is a presumption of vindictiveness in a case such as this one where a harsher sentence is imposed upon resentencing.  Second, appellant argues that if the presumption of vindictiveness cannot be applied, the increased sentence he was given on remand is the product of actual judicial vindictiveness.

[*P18]  Appellant cites *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656, in support of his argument that any increase in a sentence over that imposed originally is presumptively vindictive and requires an explanation by the resentencing judge as to specific conduct or events that have taken place since the original sentence was imposed.  *Pearce*, 725-726.  *Pearce* permits a court to impose a higher sentence on remand, but simultaneously requires that court to give reasons based upon objective information concerning identifiable conduct on the part of the defendant, 395 U.S. at 726.  Various courts in Ohio, however, have held that the presumption does not apply where, as here, the resentencing judge is not the one who originally sentenced the defendant. *State v. Chandler*, 8th Dist.No. 83963, 2004 Ohio 4242, at P 11, citing *State v. Douse*, 8th Dist. No. 82008, 2003 Ohio 5238; *Lodi v. McMasters* (1986), 31 Ohio App.3d 275, 31 Ohio B. 603, 511 N.E.2d 123, citing *Texas v. McCullough* (1986), 475 U.S. 134, 106 S. Ct. 976, 89 L. Ed. 2d 104.  The judge who resentenced appellant both times was not the original sentencing judge and there is no presumption of vindictiveness here.  The trial court was not required to state its reasons for imposing a harsher sentence on remand.  *State v. Gonzales*, 151 Ohio App.3d 160, 2002 Ohio 4937, at P 65, 783 N.E.2d 903.

[*P19]  Appellant also argues that his increased sentence was the result of actual vindictiveness.  He asserts that "vindictive sentencing tactics and animosity" toward him have been apparent at each hearing.  The United States Supreme Court further clarified the *Pearce* doctrine in *Alabama v. Smith* (1989), 490 U.S. 794, 799, 109 S. Ct. 2201, 104 L. Ed. 2d 865, explaining that, unless there was a "reasonable likelihood" that the increased sentence was the product of actual vindictiveness, the burden is on the defendant to show such animosity.  *Id*. at 799.

[*P20]  Appellant argues that the trial court made statements at the December 2006 resentencing that evidenced a vindictive motivation for increasing his sentence.  Appellant claims that the judge was attempting to discourage any future appeals.  He asserts that the judge directly attacked him for his previous appeals when, after sentence was imposed, he stated, "Okay.  We'll see you back

here probably in a couple of years." We find, however, that the judge's comment simply does not rise to the level of vindictiveness.

[*P21] After a thorough review of the hearing, we are unable to find evidence of a vindictive motive on the part of the sentencing judge. At that time, appellant's case was again before the trial court upon this court's remand. In our June 30, 2006, decision, we instructed the trial court to reenter the original terms of incarceration for each offense and to resentence in accordance with *Foster's* holding as to imposition of consecutive sentences. Appellant claims that the trial court used his case as a means of intimidating other defendants by demonstrating that harsher sentences will be given to those who successfully argue on appeal that the trial court ran afoul of *Foster* when imposing sentence. There is no evidence that the trial court had such a motive. Appellant also appears to argue that the 13-year sentence is evidence of vindictiveness on its face. The trial court, however, was simply complying with this court's instructions on remand. In compliance with this court's decision, the trial court re-imposed the original sentences for each individual offense. The court then reconsidered the consecutive nature of the sentences as imposed in 2005, pursuant to *Foster* and shortened the aggregate sentence by three years.

[*P22] Based on the foregoing, we find that appellant has not demonstrated vindictiveness on the part of the resentencing judge and, accordingly, his first assignment of error is not well-taken.

*State v. Goodell*, 2007 Ohio App. LEXIS 4686, 2007-Ohio-5318 at ¶¶17-22 (Ohio Ct. App., Sept. 28, 2007).

With respect to whether Goodell should have been afforded a presumption of vindictiveness, it is clear that the state appellate court identified and applied clearly established Supreme Court precedent. Thus, the only question left for the Court to consider on this issue is whether the application of the law was objectively unreasonable. The state appellate court found that the presumption of vindictiveness was inapplicable because the resentencing judge did not originally sentence Goodell. In *Texas v. McCullough*, 475 U.S. 134, 140 (1986), the Supreme Court found that "[t]he presumption [of vindictiveness was] inapplicable because different sentencers assessed the varying sentences that [the defendant] received." The *McCullogh* Court

-7-

explained that where the sentence is imposed by a different sentencer, it cannot be said that an increase has truly taken place.  *Id.*; *Colten v. Kentucvky*, 407 U.S. 104 (1972) (finding the *Pearce* vindictiveness presumption inapplicable where the defendant challenged his conviction in a two-tier system and the second court, which imposed a greater sentence, was not the same court that imposed the earlier sentence);[1] *cf. Chaffin v. Stynchcombe*, 412 U.S. 17, 27 (1973) (finding that presumption of vindictiveness should not be extended to jury sentencing as "the jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication").  The Supreme Court further explained that "[it] may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first  sentencer] imposed a lenient penalty."  *McCullough*, 475 U.S. at 140 (*quoting Colten*, 407 U.S. at 117.)  As such, this Court cannot find that the state appellate court's application of federal law was objectively unreasonable.  Further, Goodell's argument – that the presumption of vindictiveness should apply to all *Foster* resentencings in order to avoid chilling a defendant's appellate rights by what he calls "institutional vindictiveness" – is not supported by the record or applicable Supreme Court precedent.

Goodell alternatively argues that his sentence was the product of actual judicial vindictiveness.  Where the presumption of vindictiveness is held not to apply, a due process violation can be established only by proof of actual vindictiveness.  *See, e.g.*, *Wasman v. United*

---

[1]  In *Colten v. Kentucky*, the Defendant was convicted of a misdemeanor.  407 U.S. 104. Kentucky had a two-tier criminal justice system, under which a defendant convicted of a misdemeanor in an inferior court, if dissatisfied with the outcome, could have a *de novo* trial in a court of general criminal jurisdiction.  *Id.*

*States*, 468 U.S. 559, 569 (1984).  "While sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment, [the Supreme Court has] recognized it must not be exercised with the purpose of punishing a successful appeal." *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (citations omitted).

Goodell argues that certain statements made during the resentencing hearings illustrate judicial vindictiveness.  The resentencing judge indicated that the case had been returned from the appellate court because "[y]ou can't sprinkle the magic words on [to a sentence without] giv[ing] the basis and rationale for saying the magic words."  (Doc. No. 8, Transcript II at 10.) This statement cannot reasonably be construed as evidence of vindictiveness.  Instead, it is more reasonably an affirmation that, under Ohio law, a sentencing judge may not merely quote the statutory language when imposing such a sentence, but must explain the basis for the finding.  At best, the resentencing judge's statement might reflect some frustration with the appellate court's ruling, but not with Goodell.

Goodell also points to the resentencing judge's refusal to take into consideration the sentences received by Goodell's co-defendants.  Again, this cannot be reasonably construed as evidence of vindictiveness.  The resentencing judge stated that he was not familiar with the negotiations that resulted in the sentence of the other defendants.  He further noted that Goodell stayed behind and raped the victim at her apartment while the other defendants chased another victim down the street.  (Doc. No. 8, Transcript II at 36-41.)  He also took account of the co-defendants' statements concerning Goodell's contemporaneous response to the rape.  *Id*. Finally, he found that Goodell committed three separate crimes with each having a separate animus.  *Id*.  The judge clearly considered Goodell's crimes more serious than that of the co-

-9-

defendants and offered cogent explanations for his reasoning.

In addition, Goodell argues that the resentencing judge's vindictiveness was revealed by the following statement made by the judge directly to him: "We'll probably see you back here in a couple of years."  (Doc. No. 8, Transcript III at 24.)   The appellate court found that "the judge's comment simply does not rise to the level of vindictiveness." *Goodell*, 2007-Ohio-5318 at ¶20. Although the resentencing judge's comment is ambiguous, in light of the long appellate history of the case and the changes in Ohio's sentencing laws, it can be construed simply as an acknowledgment that another successful appeal was likely, rather than an attempt to discourage further appeal or a display of vindictiveness.

Goodell again argues that the sentence imposed was an attempt to intimidate him and other defendants similarly situated from appealing their sentences as permitted by *Foster*.  The state appellate court found no evidence of any such motive.  *Goodell*, 2007-Ohio-5318 at ¶21. Goodell's argument amounts to pure speculation, as he has not identified any evidence that could sustain such a conclusion.  As such, the state appellate court's decision was not objectively unreasonable.

Finally, the Court notes that Goodell's motion to supplement the record with his presentence report, filed under seal, was granted.  This same document was part of the record during his state appeal.  However, Goodell offered the report primarily as a rebuttal to the Respondent's arguments rather than as direct evidence of vindictiveness.[2]  Be that as it may, there is nothing in the record to indicate that the sentencing court improperly relied upon the

_____

[2]  Respondent argued that the resentencing judge had a presentence report available while the first judge did not, thus explaining, in part, the discrepancy between the sentences. (Doc. No. 8, Transcript III at 9.)

report or any information therein to mask an otherwise vindictive sentence.

In conclusion, the state appellate court's decision that Goodell's sentence was not the product of vindictiveness was neither contrary to nor an unreasonable application of clearly established federal law.  As such, ground one is without merit.

**B.  Ground Two: *Ex Post Facto* and Due Process**

In ground two of his petition, Goodell argues that the Ohio Supreme Court's severance remedy in *Foster* violated the *ex post facto* and due process clauses of the United States Constitution.  (Doc. No. 1 at 19-20.)   The state appellate court rejected this argument, finding as follows:

> [*P24]  In his third assignment of error, appellant asserts that the trial court violated the Ex Post Facto Clause of the United States Constitution by retroactively applying *Foster* to crimes that occurred before that decision was issued.  The constitutional prohibition against ex post facto laws, however, applies only to legislative enactments.  *Rogers v. Tennessee* (2001), 532 U.S. 451, 456, 121 S. Ct. 1693, 149 L. Ed. 2d 697.  In *State v. Coleman*, 6th Dist. No. S-06-023, 2007 Ohio 448, this court held that the Ex Post Facto Clause does not apply to resentencing hearings conducted pursuant to *Foster*.  Appellant's third assignment of error is not well-taken.

*Goodell*, 2007-Ohio-5318 at ¶24.

The United States Constitution states, in pertinent part, that "No Bill of Attainder or ex post facto Law shall be passed."  The United States Supreme Court has explained that the *ex post facto* clause "is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government."  *Marks v. United States*, 430 U.S. 188 (1977) (internal citations omitted).  In *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001), the Supreme Court held that the due process clause does not incorporate or extend *all* the restrictions imposed upon state legislatures by the *ex post facto* clause into the province of state judicial decisions.

-11-

*See Garrett v. Warden*, 2009 U.S. Dist. LEXIS 42826 (S.D. Ohio May 19, 2009).  However, some limitations stemming from the *ex post facto* clause are also inherent in the notion of due process.  *See Marks*, 430 U.S. at 191-92 ("[T]he principle on which the [*Ex Post Facto*] Clause is based - the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties - is fundamental to our concept of constitutional liberty.")  In *Bouie v. City of Columbia*, 378 U.S. 347 (1964), the Supreme Court found that a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct that had not been criminal prior to the court's new construction.  Consequently, *post hoc* criminalization of a previously innocent act failed to give defendants fair warning of the punitive consequences of their behavior.[3]  The *Rogers* Court rested its rationale on "core concepts of notice, foreseeability, and in, particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct."  532 U.S. at 459.

Neither the United States Supreme Court nor the Sixth Circuit has addressed the issue of whether the *Foster* decision is tantamount to an *ex post facto* law.  However, the Sixth Circuit has repeatedly held that the retroactive application of a similar remedial sentencing ruling in *Booker* did not raise an *ex post facto* issue.  *See United States v. Hill*, 209 Fed. Appx. 467, 468 (6th Cir. 2006); *United States v. Barton*, 455 F.3d 649, 657 (6th Cir. 2006); *United States v. Shepherd*, 453 F.3d 702, 705-06 (6th Cir. 2006); *U.S. v. Sexton,* 512 F.3d 326, 331 (6th Cir. 2008).

---

[3]  Though the *Bouie* Court held that a defendant may only be punished for acts that were criminal at the time the defendant performed them, the Supreme Court has also held that unconstitutional statutes may, nevertheless, give a defendant fair warning of the penalties that a state may seek to impose on a defendant.  *See Dobbert v. Florida*, 432 U.S. 282 (1977); *accord United States v. Duncan*, 400 F.3d 1297, 1307-08 (11th Cir. 2006).

-12-

In *Barton*, the Sixth Circuit addressed the *ex post facto* argument and concluded that because *Blakely* had been decided prior to the defendant's conviction, it "would not have been a leap in logic to expect the Supreme Court to apply *Blakely*" to the federal sentencing guidelines in some manner.  *Id*. at 653-54.

The Ohio Supreme Court also recently addressed identical *ex post facto* and due process arguments.  *See State v. Elmore*, 2009-Ohio-3478, 2009 Ohio LEXIS 1954 (Ohio 2009).  It held that neither the *ex post facto* nor due process clauses were violated, because *Foster* did not judicially increase the range of his potential sentence, nor did it retroactively apply a new statutory maximum.  *Id* at ¶¶12-30.  The *Elmore* Court concluded that the defendant had notice of the sentencing range, which was unchanged from the time he committed the crimes to when he was resentenced.  *Id.*

While the Ohio Supreme Court's interpretation of federal law is not binding on this Court, the *Elmore* decision is persuasive.  Moreover, other federal courts sitting in Ohio also have rejected *ex post facto* challenges to the retroactive application of judicial reconstruction of a statute.  *See, e.g., Keith v. Voorhies,* 1:06CV2360, 2009 U.S. Dist. LEXIS 4726, at * 34, (N.D. Ohio Jan. 23, 2009)( Lioi, J.); *Watkins v. Williams*, 2008 U.S. Dist. LEXIS 47557 (N.D. Ohio Jun. 17, 2008) (Adams, J.); *Lyles v. Jeffreys*, 2008 U.S. Dist. LEXIS 33822 (N.D. Ohio Apr. 24, 2008) (Oliver, J.); *Smith v. Moore,* 2008 WL 3890009, Case No. 3:07CV1121, (N.D. Ohio Aug. 19, 2008) (Adams, J.); *Hooks v. Sheets*, 2008 U.S. Dist. LEXIS 77612 (S.D. Ohio Oct. 3, 2008) (Beckwith, J.).  As noted in *Rettig v. Jefferys*, 2007 U.S. Dist. LEXIS 97648, 24-25 (N.D. Ohio Dec. 17, 2007):

> Ohio courts have uniformly rejected *ex post facto* challenges to the *Foster* decision. *See, e.g., State v. Swann*, 171 Ohio App.3d 304, 314, 2007 Ohio

-13-

2010, 870 N.E.2d 754, 762 (Ohio Ct. App. 2007); *State v. Sharp*, 2007 Ohio 6324, 2007 WL 4200755, at *2 (Ohio Ct. App. 2007); *State v. McGhee*, 2006 Ohio 5162, 2006 WL 2796275, at *7 (Ohio Ct. App. 2006). *See generally United States v. Barton*, 455 F.3d 649, 657 (6th Cir.), *cert. denied*, 127 S. Ct. 748, 166 L. Ed. 2d 579 (2006) (*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), does not violate *ex post facto*).  The court in *McGhee* found no *ex post facto* violation because the defendant "knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because [he] was unlikely to amend his criminal behavior in light of a sentencing change."  *McGhee*, 2006 Ohio 5162, 2006 WL 2796275, at *7.  In *Sharp*, the court noted that "the sentencing range was the same at the time [the defendant] committed the offenses as when he was sentenced," and *Foster* "did not judicially increase the range of his sentence."  *Sharp*, 2007 Ohio 6324, 2007 WL 4200755, at *2.

In *Hooks*, the Southern District Court also explained that the *ex post facto* clause limits legislative powers and *not* judicial decisions – a finding echoed by the state appellate court. 2008 U.S. Dist. LEXIS 77612 at *8 (*citing Rogers v. Tennessee*, 532 U.S. 451, 456 (2001)).  The *Hooks* decision acknowledged that "retroactive judicial decision-making must comport with core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct."  *Id.* (citations omitted).  Nevertheless, the court found that neither *Blakely* nor *Foster* altered the range of potential penalties faced by a criminal defendant in Ohio. *Id.*  In *Lyles*, the Court noted that, although Ohio's sentencing statutes may have been unconstitutional at the time the defendant was sentenced, Ohio law "gave [petitioner] fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts."  2008 U.S. Dist. LEXIS 33822 at *4.

Although a portion of Ohio's sentencing statutes may have been unconstitutional at the time of Goodell's criminal acts, they nevertheless gave him fair notice that: (1) the acts were

-14-

prohibited; and, (2) the degree of punishment which the Ohio legislature wished to impose on those who committed such acts.  As *Foster* did not judicially create the possibility of consecutive sentences where none had existed before, Goodell cannot credibly argue that he lacked fair warning of the potential penalties applicable to the prohibited conduct.  *See United States v. Alson-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2ⁿᵈ Cir. 2005); *United States v. Lata*, 415 F.3d 107, 112 (1ˢᵗ Cir. 2005).  Therefore, the state appellate court did not unreasonably apply clearly established federal law and no *ex post facto* or due process violations occurred.

Goodell argues that the remedy adopted by the Supreme Court in *Foster* is distinguishable from that adopted by the United States Supreme Court in *Booker*.  (Doc. No. 16 at 27-29.)  He asserts that *Foster* effectively eliminated the ability of an appellate court to review a sentence and thereby violated his right to due process.

There has never been a federal constitutional right to an appeal.  *Abney v. United States*, 431 U.S. 651 (1977); *Martinez v. Court of Appeal*, 528 U.S. 152, 160 (2000); *accord Hollin v. Sowders*, 710 F.2d 264, 267 (6th Cir. 1983); *Horton v. Bomar*, 335 F.2d 583, 584 (6th Cir. 1964).  Even more to the point, a defendant does not have the right to appeal the length of his sentence.  *See United States v. Nation*, 352 F.3d 1075, 1076-1077 (6ᵗʰ Cir. 2003) ("[A Defendant] has no constitutional right to appeal his sentence." ); *accord United States v. Burns*, 433 F.3d 442, 445 (5ᵗʰ Cir. 2005) ("There is no constitutional right to appeal a criminal sentence.") (*citing Jones v. Barnes*, 463 U.S. 745 (1983)).  However, "if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the

-15-

demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (*quoting Griffin v. Illinois*, 351 U.S. 12, 18 (1956)).

Ohio, by statute, confers upon defendants limited appellate rights with respect to their sentences. *See* O.R.C. § 2953.08. As explained in its opinion, the *Foster* court excised certain statutory provisions that required impermissible judicial fact-finding as follows:

> The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms. R.C. 2953.08(G), which refers to review of statutory findings for consecutive sentences in the appellate record, no longer applies. We also excise R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders.

> ... Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. *See* R.C. 2929.11(A). The excised portions remove only the presumptive and judicial findings that relate to "upward departures," that is, the findings necessary to increase the potential prison penalty. We add no language, and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place.

> We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of consecutive prison terms. Finally, we hold that R.C. 2929.14(D)(2)(b) and (3)(b) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications. The appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies.

> Accordingly, we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than

-16-

the minimum sentences.

*Foster*, 845 N.E.2d at 497-98.

    *Foster* held that O.R.C. § 2953.08, in so far as it refers to the other severed sections, no longer applies.  However, it did not sever all appeal rights.[4]  It also left in tact the statutory provisions setting forth the purposes of sentencing and the provisions dealing with seriousness and recidivism factors – O.R.C. §§ 2929.11 and 2929.12.  The provisions are not dissimilar to those found in the federal sentencing guidelines.  These statutes guide judges in the "overriding purposes of felony sentencing, which are 'to protect the public from future crime by the offender and others and to punish the offender,'" and yet give trial courts discretion "to determine the most effective way to comply with the purposes and principles of sentencing."  *Foster*, 845 N.E.2d at 484 (*quoting* O.R.C. §§ 2929.11(A) & O.R.C. § 2929.12(A)); *see also State v. Kalish*, 120 Ohio St. 3d 23, 26, 896 N.E.2d 124, 128-29 (Ohio 2008).  For example, trial courts generally discuss the seriousness of the offense and the  likelihood of recidivism at the sentencing hearing.  *See Almendarez-Torres v. United States*, 523 U.S. 224, 243,(1998) ("recidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's

_____

    [4]  In *State v. Mathis*, 109 Ohio St.3d 54, 59, 846 N.E.2d 1 (2006), the Ohio Supreme Court stated:

    Unaffected by *Foster* were the state's appeals as a matter of right for a sentence where no prison term was imposed despite the presumption favoring prison for certain offenses, or for judicial modification of a sentence for a first- or second-degree felony under R.C. 2929.20. [R.C. 2953.08(B)(1) and (3)].  Nor was the defendant's or the state's appeal as of right affected when the sentence "is contrary to law." [R.C. 2953.08(A)(4) and (B)(2)].

-17-

sentence").[5]

Though Ohio courts never disputed criminal defendants had a right to appeal their sentence after *Foster*, it was unclear what standard of review should apply to sentencing appeals.  Prior to *Foster*, it was undisputed that an appellate court was to "review the records, including the findings underlying the sentence or modification" and had the power to "take any action ... if it clearly and convincingly finds" either that the record fails to support the sentencing court's findings or the sentence is otherwise contrary to law.  *Kalish*, 896 N.E.2d at 127 (*citing* O.R.C. § 2953.08(G)(2)).  In fact, the former statute expressly stated that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."  O.R.C. § 2953.08(G)(2).  After *Foster* excised the requirement for the sentencing court to make judicial factfindings, it was unclear if sentences were to continue to be reviewed under a clear and convincing standard or under the old abuse-of-discretion standard.  In *Kalish*, the Ohio Supreme Court chose the latter standard and held that appellate courts must apply a two-step approach in reviewing felony sentences.  "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.  If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard."  896 N.E.2d at 126.  The *Kalish* court explains that O.R.C. §§ 2929.11 and 2929.12 are not factfinding statutes, but instead set out guides for a trial court to use in fashioning an appropriate sentence.  *Id.* at 128.  Therefore, sentences,

---

[5]  A judge can consider, among other things, such factors as "whether the physical or mental injury was worsened 'because of the physical or mental condition or age of the victim;' whether the offense caused serious physical, psychological, or economic harm to the victim; whether the defendant held a public office or position of trust in the community, and the offense related to that office or position."  *Foster*, 845 N.E.2d at 485.

including those made consecutive, are subject to appellate review for abuse-of-discretion.  *Id.*

While *Kalish* dictated the standard in Ohio courts for reviewing felony sentences, this Court's sole concern in the instant matter is whether this violates clearly established federal law as set out in United States Supreme Court precedent.  Goodell argues that the severance remedy crafted in *Foster* is not analogous to the remedy crafted in *Booker*.  The Court concedes that the remedies are not identical.  The *Booker* court left in place sentencing guidelines, but found that the application of the guidelines was not mandatory.  *Foster*, on the other hand, eliminated findings previously applicable to consecutive and some greater than the minimum terms, while maintaining a relatively narrow range of sentences for the five levels or degrees of felonies. Goodell avers that *Booker* maintained a reasonableness standard of review concerning the appropriateness of a given sentence while *Foster* did not.  Ohio, as stated above, currently allows review on an abuse-of-discretion standard.  The *Booker* decision, however, did not set a threshold or minimum standard determinative of whether a state's appellate process comports with due process and equal protection.  Goodell has not identified any clearly established federal law that renders abuse-of discretion sentencing appeal procedures, such as those adopted in Ohio, unconstitutional.[6]  As such, any differences between the two standards of appellate review are not of a constitutional magnitude.

Finally, Goodell is clearly aware of the United States Supreme decision in *Oregon v. Ice*, 129 S.Ct. 711, 172 L. Ed. 2d 517 (2009), as he argues that the *Foster* court unnecessarily severed a constitutional provision when it eliminated the need for judicial fact-findings before the

---

[6]  Though the *Kalish* decision was not rendered until after Goodell's final sentencing appeal, it is immaterial as Goodell has failed to identify any clearly established federal law that invalidates either of the appellate review approaches considered by Ohio courts.

imposition of consecutive sentences.  Nonetheless, Goodell fails to grasp the fatal consequences of the *Ice* decision to his argument.  The *Ice* court found that *Blakely* and the Sixth Amendment are simply inapplicable to consecutive sentences, explaining that historically juries played "no role in the decision to impose sentences consecutively or concurrently [but] [r]ather, the choice rested exclusively with the judge."  129 S. Ct. at 717.  Therefore, when imposing a consecutive sentence, neither judicial fact-finding nor the lack of such findings, violate clearly established federal law.  In addition, assuming *arguendo* that the *Foster* remedy should not have applied, the Court finds that any error arising from a failure to sentence Goodell pursuant to the previous sentencing scheme was harmless.  It is well established that a constitutional error does not automatically entitle a defendant to habeas relief, as such error may, in many cases, be harmless. The United States Supreme Court has held that only structural error requires automatic reversal. The Court has further held that *Blakely* violations are not structural and, thus, are subject to harmless error review.  *See, e.g.*, *Washington v. Recuenco*, 548 U.S. 212 (2006); *accord Curtis v. Brunsman*, 2009 U.S. Dist. LEXIS 47033 (S.D. Ohio Jun. 4, 2009).  Here, Goodell was first sentenced according to the statutory scheme in place at the time of his offense.  The sentencing judge made factual findings in accordance with Ohio law and imposed consecutive sentences. His sentence was overturned on the unrelated ground that the scope of the state appellate court's remand was exceeded when the judge changed the length of the underlying sentences.  Goodell was then resentenced according to the post-*Foster* standards and again received consecutive sentences.[7]  As such, any error was harmless.

---

[7]  Goodell uses the *Ice* decision to argue that the *Foster* court's invalidation of O.R.C. § 2929.14(E)(4) – the statute governing the imposition of consecutive sentences – was unnecessary as it did not run afoul of *Blakely*.  While this latter point may be true, he

-20-

**IV.  Conclusion**

For the foregoing reasons, it is recommended that Goodell's Petition be DENIED.

s/ Greg White
U.S. MAGISTRATE JUDGE

Date: September 8, 2009

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

does not cite any law suggesting that a state court's application of federal law in an unsettled area is *per se* unreasonable when it conflicts with a later decision of the United States Supreme Court.  Moreover, he asserts that he is entitled to the statutory presumption of concurrent sentences without explaining why he could not be sentenced to consecutive sentences under the pre-*Foster* statutory scheme which clearly allowed for the imposition of consecutive sentences.